# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Juan C.M.C.,

                Petitioner,

v.

Todd Blanche, *Acting Attorney General*;
Markwayne Mullin, *Secretary, U.S.
Department of Homeland Security*; Todd M.
Lyons, *Acting Director of Immigration and
Customs Enforcement*; and David Easterwood,
*Acting Director, St. Paul Field Office
Immigration and Customs Enforcement*,

                Respondents.

Civ. No. 26-2402 (JWB/ECW)

**ORDER ON
PETITION FOR WRIT OF
HABEAS CORPUS**

---

Claire Glenn, Esq., Climate Defense Project, counsel for Petitioner.

David W. Fuller, Esq., and Worthington Phillips, Esq., United States Attorney's Office, counsel for Respondents.

---

Petitioner Juan C.M.C. is a noncitizen who was detained within the United States and remains in custody without any opportunity to seek release on bond. This case presents a narrow question: whether a noncitizen who was previously released into the United States, lived in the community for several years while complying with immigration supervision, and was later re-detained as an applicant for admission may continue to be held without any meaningful opportunity to obtain an individualized determination regarding the justification for his continued detention.

The governing statute authorizes detention of noncitizens classified as applicants

for admission. But statutory authority to detain does not itself resolve whether the manner in which that authority is exercised satisfies the Due Process Clause. Whether the Constitution requires additional process under the circumstances presented here is a separate question. On the facts of this case, the answer is to provide Petitioner with a prompt bond hearing.

## BACKGROUND

Petitioner is a citizen of Ecuador. (*See* Doc. No. 1, Petition ¶¶ 7, 14.) Upon arrival to the United Sates, he was encountered by U.S. Customs and Border Protection and released into the country. (*Id.* ¶ 15; Doc. No. 7, Campbell Decl. ¶ 4.) Petitioner was enrolled into an Alternative to Detention program that required weekly biometric check-ins. (Campbell Decl. ¶ 4.)

Petitioner resides in Minneapolis, Minnesota, where he lives with his spouse and five-year-old daughter. (Petition ¶¶ 7, 14, 17.) He is an active member of his church and community. (*Id.* ¶ 17.) Petitioner remained at liberty under immigration supervision for several years before his re-detention. (*Id.* ¶ 15.) During that time, he complied with the conditions of his immigration supervision and consistently appeared as directed for immigration proceedings. (*Id.* ¶ *16*.)

Respondents allege that Petitioner has a criminal history in Minnesota, including arrests for driving while impaired and domestic assault. (Campbell Decl. ¶¶ 7–11.) But state court records submitted by Petitioner indicate that the criminal history cited by Respondents belongs to a different individual. (Doc. No. 9, Glenn Decl. ¶¶ 2–4.)

Respondent's submissions include additional discrepancies, including an

2

allegation that Petitioner was not admitted or paroled after inspection in 2022 but then a declaration stating that he was. (*Compare* Campbell Decl. Ex. A at 1 *with* Campbell Decl. ¶ 4.)

On April 20, 2026, immigration authorities took Petitioner into custody after local authorities arrested him in Dakota County, Minnesota, for traffic violations. (Petition ¶¶ 19–20; Campbell Decl. ¶ 13.) Petitioner has since remained in custody at the Freeborn Adult Detention Center in Albert Lea, Minnesota. (Petition ¶ 21; Campbell Decl. ¶ 13.)

On June 22, 2026, the Immigration Judge denied Petitioner's applications for relief and ordered him removed. (Doc. No. 16 at 2.) That decision remains subject to administrative appeal. (*Id.*)

## DISCUSSION

### I.    Legal Standard

A writ of habeas corpus may issue where a petitioner is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Petitioner bears the burden of establishing, by a preponderance of the evidence, that his detention lacks a lawful basis. *See Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025) (collecting cases).

Petitioner principally claims that his continued detention violates the Due Process Clause of the Fifth Amendment. He also asserts claims under the Fourth Amendment, the Administrative Procedure Act, and the *Accardi* doctrine. (Petition ¶¶ 56–79.)

This Petition challenges only the legal basis for Petitioner's present detention. It does not challenge the initiation of removal proceedings, the validity of any removal order, or the execution of removal. Jurisdiction therefore lies under 28 U.S.C. § 2241 to

3

review the legal basis for custody. *See, e.g.*, *Mohammed H. v. Trump*, 786 F. Supp. 3d 1149, 1154–55 (D. Minn. 2025). Because this Petition challenges only Petitioner's detention, and not his removability or any removal order, the statutory jurisdiction-channeling provisions do not apply. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018).

## II.    Analysis

### A.    Statutory Detention Authority

Respondents contend that Petitioner is an applicant for admission subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A).

Section 1225 applies to "applicants for admission," defined as a noncitizen "present in the United States who has not been admitted or who arrives in the United States." *See* 8 U.S.C. § 1225(a). Section 1225(b)(2)(A) provides that applicants for admission who are not "clearly and beyond a doubt entitled to be admitted" "shall be detained" for removal proceedings. 8 U.S.C. § 1225(b)(2)(A). Section 1225(b)(2) does not provide for bond hearings. *See Jennings*, 138 S. Ct. at 842, 851.

The Eighth Circuit recently affirmed Respondents' position that the phrases "applicant for admission" and "seeking admission" are the same. *Avila v. Bondi*, 170 F.4th 1128, 1134–36 (8th Cir. 2026). Under *Avila*, a noncitizen present in the United States who has not been lawfully admitted is treated as an applicant for admission for purposes of § 1225(b)(2)(A), regardless of whether they were encountered at the border or within the interior. And under that statutory provision, the government can detain without bond. *See id.* at 1138 (finding the district court "erred in holding that the

4

Government could not detain Avila without bond under § 1225(b)(2)(A)"); *see also*

*Jennings*, 138 S. Ct. at 851 (pointing out that § 1225(b)(2) does not reference bond

hearings and finding that periodic bond hearings are not required under a statutory

construction analysis).

Respondents assert that Petitioner, as a noncitizen who has not been lawfully

admitted, is deemed to be an applicant for admission and subject to mandatory detention

without bond, no matter how far from the border he was apprehended or how long he had

been living inside the country.

That is an accurate statement of § 1225(b)(2)'s meaning under *Avila*. Petitioner

therefore cannot prevail on the theory that his detention violates the statute itself. But that

conclusion does not resolve this case. Statutory authority to detain does not itself resolve

whether the manner in which that authority is exercised comports with the Constitution.

Indeed, in *Jennings*, the Supreme Court rejected a statutory construction that would have

required bond hearings under § 1225(b)(2), while expressly declining to decide the

constitutional question. 138 S. Ct. at 851.

The Constitution raises a separate inquiry. The Fifth Amendment's Due Process

Clause protects noncitizens in removal proceedings from deprivations of liberty without

due process of law. *Reno v. Flores*, 507 U.S. 292, 306 (1993). Thus, even where

Congress has authorized mandatory detention under § 1225(b)(2), this Court must still

determine whether the procedures afforded satisfy the requirements of due process under

the particular circumstances presented.

Therefore, the question here is not whether Congress authorized Petitioner's

detention under § 1225(b)(2). It did. The question is whether, under the specific facts of this case, Petitioner's continued detention without any meaningful opportunity to obtain an individualized determination regarding the justification for that continued detention satisfies the Due Process Clause.

### B. Constitutional Protections

The Fifth Amendment prohibits the government from depriving any person of liberty without due process of law. U.S. Const. amend. V. That protection extends to all persons physically present within the United States, including noncitizens, regardless of whether their presence is lawful, unlawful, temporary, or permanent. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Although civil immigration detention is constitutionally permissible in appropriate circumstances, it must remain reasonably related to its nonpunitive purposes and must satisfy the requirements of procedural due process. *Jackson v. Indiana*, 406 U.S. 715, 738 (1972).

As explained above, the question is not whether Congress authorized Petitioner's detention under § 1225(b)(2)(A). That statutory question is resolved by *Avila*. The question is whether Petitioner's continued detention, under the particular facts presented here, comports with the Due Process Clause. *See Smith v. Org. of Foster Fams. for Equal. & Reform*, 431 U.S. 816, 847 (1977) (recognizing that once a protected liberty interest is shown, the next step is to determine what process is due in the particular context.) That inquiry is governed by the familiar balancing framework established in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), which considers (1) the private liberty interest affected, (2) the risk of an erroneous deprivation through the procedures used and

the probable value of additional safeguards, and (3) the government's interests.

Respondents contend that no procedural due process inquiry is needed. They argue that because Petitioner is treated by statute as an applicant for admission, Congress has already determined the circumstances under which detention is required and no additional process is constitutionally necessary. Their authorities do not go so far.

Neither *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020), nor *Kaplan v. Tod*, 267 U.S. 228 (1925), forecloses Petitioner's claim. Those decisions address the constitutional status of applicants for admission and the legal consequences of parole for purposes of the immigration laws. They do not hold that the Executive may continue to deprive a person physically present within the United States of liberty without constitutionally adequate procedures under the particular circumstances presented here.

*Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 (1953), likewise does not control. *Mezei* involved an individual detained at the threshold of entry after exclusion from the United States—not a person who entered the country, had been released into the community, complied with immigration supervision for years, and was later re-detained within the interior.

Respondents also rely on *Connecticut Department of Public Safety v. Doe*, 538 U.S. 1 (2003), arguing that because § 1225(b)(2)(A) does not make detention contingent upon dangerousness or flight risk, procedures directed toward those questions are irrelevant. *Connecticut* is not controlling. There, the Supreme Court held that due process did not require a hearing on dangerousness because the sex offender registration statute at issue turned solely on the fact of prior conviction, and a determination of dangerousness

was legally irrelevant to the statutory scheme. *Id.* at 7–8. Here, by contrast, Petitioner does not seek a hearing on a fact that Congress has made irrelevant to detention under § 1225(b)(2)(A). He contends that, under the particular circumstances presented here, the Due Process Clause itself requires a meaningful opportunity to obtain an individualized determination before his continued detention may persist. *Connecticut* therefore does not foreclose the constitutional inquiry presented in this case.

Nor does *Banyee v. Garland*, 115 F.4th 928 (8th Cir. 2024), compel a different conclusion. *Banyee* concerned mandatory detention under § 1226(c), arising from criminal removability, and principally rejected a claim that detention became unconstitutional solely because of its duration. Petitioner's claim is different. He does not ask this Court to adopt a temporal limitation on detention. Instead, he challenges the complete absence of any individualized process to test whether continued detention remains justified under the particular circumstances of his case.

Applying the *Mathews* factors, Petitioner's liberty interest is substantial. Petitioner was detained for three days after arriving at the border. The government then released him into the United States under an alternative-to-detention program. Over the next few years, Petitioner developed ties to his community in Minneapolis, where he lived with his wife and five-year-old daughter. While released, he complied with his supervision requirements, maintained an updated address with ICE, and appeared for his immigration proceedings as directed. Under these circumstances, Petitioner's continued physical confinement represents a significant deprivation of liberty.

The risk of erroneous deprivation is likewise substantial. Respondents have never

8

afforded Petitioner an individualized determination as to whether he presents a flight risk or danger to the community. Indeed, the record indicates that Respondents may have relied, at least in part, upon criminal history that appears to belong to another individual rather than Petitioner himself. In addition, Respondent's submissions include other discrepancies, such as a document alleging that Petitioner was not admitted or paroled after inspection in 2022 and a declaration stating that he was. Without any meaningful opportunity for Petitioner to challenge the factual basis for his continued detention or to obtain an individualized determination regarding its justification, those potential errors remain untested.

The government's interests in ensuring Petitioner's appearance at future immigration proceedings and protecting the public are unquestionably significant. But requiring a prompt individualized custody determination does not diminish those interests. It requires only that continued detention be justified before a neutral decisionmaker. Such a procedure imposes only a modest administrative burden while substantially reducing the risk of an erroneous deprivation of liberty.

Under the particular circumstances presented here, Petitioner's continued detention without any meaningful opportunity to obtain an individualized determination regarding the justification for that detention does not satisfy procedural due process. Accordingly, Petitioner's continued detention violates the Due Process Clause of the Fifth Amendment.

### C.    Fourth Amendment and Warrantless Arrest

Petitioner also raises Fourth Amendment and related statutory concerns arising

from the circumstances of his warrantless arrest. Because Petitioner's continued detention violates the Due Process Clause for the reasons discussed above, those additional claims need not be resolved. This Court expresses no opinion regarding their merits.

### D.  Remedy

The appropriate remedy is a prompt bond hearing before an Immigration Judge. The constitutional deficiency identified here is procedural, not statutory. Although § 1225(b)(2) authorizes Respondents to detain Petitioner as an applicant for admission, that statutory authority does not eliminate the constitutional requirement that continued immigration detention satisfy due process under the particular circumstances presented.

The appropriate remedy is to require Respondents to provide the constitutionally adequate process that has been lacking. Under the existing statutory and regulatory framework, a prompt individualized custody hearing before an Immigration Judge is the appropriate means of providing that process. This relief is not constitutionally required in every case arising under § 1225(b)(2). Rather, it is warranted under the particular facts presented here, including Petitioner's release into the United States, his years of compliance with immigration supervision while living in the community, the absence of any individualized custody determination, and the substantial questions raised concerning the factual basis for Respondents' continued detention decision.

Respondents shall therefore provide Petitioner with an individualized custody hearing before an Immigration Judge within seven days of this Order. At that hearing, Respondents may seek continued detention based upon an individualized showing that Petitioner presents a flight risk, a danger to the community, or another lawful basis

warranting continued detention.

Petitioner's statutory classification as an applicant for admission remains relevant to Respondents' detention authority, but it does not, standing alone, resolve whether continued detention is constitutionally permissible under the circumstances presented here. If Respondents do not provide the required custody hearing within seven days, Petitioner shall be immediately released from custody.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings in this case, **IT IS HEREBY ORDERED** that:

1.      Petitioner Juan C.M.C.'s Petition for Writ of Habeas Corpus (Doc. No. 1) is **GRANTED IN PART**.

2.      Petitioner's continued detention, under the particular circumstances presented here and without any meaningful opportunity to obtain an individualized determination regarding the justification for that continued detention, violates the Due Process Clause of the Fifth Amendment.

3.      Within seven (7) days of the date of this Order, Respondents shall provide Petitioner with an individualized custody hearing before an Immigration Judge in Minnesota. At that hearing, Respondents may seek Petitioner's continued detention based upon an individualized showing that continued custody is justified.

4.      Respondents, or anyone acting in concert with Respondents, are **ENJOINED** from removing, transferring, or otherwise facilitating the removal of Petitioner from the District of Minnesota until the custody hearing required by this Order

11

has been conducted and the Immigration Judge has issued a custody determination.

5. If Respondents do not provide the hearing required by Paragraph 3 within seven (7) days of the date of this Order, Petitioner shall be immediately released from custody.

6. If Petitioner is released:

   a. **Release and Return of Property.** In the event that Respondents release Petitioner, he must be released in Minnesota. At the time of Petitioner's release, Respondents shall return to Petitioner all personal property in Respondents' custody or control, including but not limited to, passports, identity papers or licenses, immigration records, prescribed medications, and treatment-related equipment. Release may not be delayed for any reason related to the retrieval, processing, or return of such property. Any delay or failure to effectuate release in accordance with this paragraph constitutes noncompliance with this Order.

   b. **Return to Minnesota.** If Petitioner is currently held outside Minnesota, Respondents shall initiate Petitioner's return to Minnesota for the sole purpose of effectuating release. Respondents shall not delay initiating Petitioner's return based on administrative convenience, transportation availability, or detention-capacity considerations.

   c. **Weather-Related Delay.** If weather conditions present a safety risk at the time of release, Respondents may delay physical release only for the brief period necessary to ensure safe release. Any such delay must be strictly limited and may not be used to justify continued custody where a safe alternative is available.

   d. **No Recharacterization of Custody.** Respondents may not administratively recharacterize the release granted by this Order as grounds to impose conditions or re-impose existing conditions in conjunction with release (including release on recognizance or similar instruments), without prior notice to and authorization from the Court, or absent a new and independently lawful custody decision properly executed under the law. For the avoidance of doubt, Respondents' compliance with this Order would require Petitioner's release in Minnesota without any newly issued instrument that either imposes new conditions of supervision or restraint or restates previously imposed conditions. Any such conditions imposed at the time of Petitioner's

12

release shall be considered null and void as inconsistent with this paragraph.

7.      **Notice.** On or before **August 1, 2026**, Respondents shall file a notice advising the Court whether they have complied with this Order. If a custody hearing has been conducted, Respondents shall report the disposition of that hearing. If Petitioner has been released, Respondents shall state the date, time, and location of the release.

8.      Because the Petition is resolved on due process grounds, Petitioner's remaining habeas claims are not reached.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: July 22, 2026                                *s/ Jerry W. Blackwell*
Time: 6:05 p.m.                                  JERRY W. BLACKWELL
                                                          United States District Judge

13